UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION

IN RE:

YWFM, LLC d/b/a                                    CASE NO.: 18-40469-KKS
Brian's Tire and Service,                          CHAPTER 11

      Debtor.

_____/

## AMENDED DISCLOSURE STATEMENT

### I.    INTRODUCTION

This is the amended disclosure statement (the "Disclosure Statement") in the small business Chapter 11 case of YWFM, LLC d/b/a Brian's Tire and Service (the "Debtor"). This Disclosure Statement contains information about the Debtor and describes the Amended Plan (the "Plan") filed by the Debtor on March 26, 2019. The proposed distributions under the Plan are discussed below. A full copy of the Plan is attached to this Disclosure Statement as Exhibit A. **Your rights may be affected. You should read the Plan and this Disclosure Statement carefully and discuss them with your attorney. If you do not have an attorney, you may wish to consult one.**

### A.    Purpose of This Document

This Disclosure Statement describes:

- The Debtor and significant events during the bankruptcy case.
- How the Plan proposes to treat claims or equity interests of the type you hold (i.e., what you will receive on your claim or equity interest if the plan is confirmed).
- Who can vote on or object to the Plan.
- What factors the Bankruptcy Court (the "Court") will consider when deciding whether to confirm the Plan.
- Why the Debtor believes the Plan is feasible, and how the treatment of your claim or equity interest under the Plan compares to what you would receive on your claim or equity interest in liquidation.
- The effect of confirmation of the Plan.

Be sure to read the Plan as well as the Disclosure Statement. This Disclosure Statement describes the Plan, but it is the Plan itself that will, if confirmed, establish your rights.

**B.      Deadlines for Voting and Objecting; Date of Plan Confirmation Hearing**

The Court has not yet confirmed the Plan described in this Disclosure Statement. This section describes the procedures pursuant to which the Plan will or will not be confirmed.

1.      *Time and Place of the Hearing to Finally Approve This Disclosure Statement and Confirm the Plan*

The hearing at which the Court will determine whether approve this Disclosure Statement on a final basis and confirm the Plan will take place on April 18, 2019 at 11:00 AM, E.T., at the United States Bankruptcy Courthouse, 2nd floor courtroom, 110 E Park Ave, Tallahassee, FL 32301.

2.      *Deadline For Voting to Accept or Reject the Plan*

If you are entitled to vote to accept or reject the plan, vote on the enclosed ballot and return the ballot in the enclosed envelope to Bruner Wright, P.A., 2810 Remington Green Circle, Tallahassee, FL 32308, or email the ballot to twright@brunerwright.com. See section IV.A. below for a discussion of voting eligibility requirements.

Ballots must be received on or before April 11, 2019.  No vote received after such time will be counted.

3.      *Deadline for Objecting to the Adequacy of Disclosure and Confirmation of the Plan*

Objections to Disclosure Statement or the Plan filed on March 26, 2019 must be filed by April 11, 2019.

4.      *Identity of Person to Contact for More Information*

If you want additional information about the Plan, you should contact Bruner Wright, P.A., 2810 Remington Green Circle, Tallahassee, FL 32308.

**C.      Disclaimer**

***The Court has not yet approved this Disclosure Statement as containing adequate information to enable parties affected by the Plan to make an informed judgment about its terms.  The Court has not yet determined whether the Plan meets the legal requirements for confirmation, and even if the Court conditionally approves this Disclosure Statement, it would not constitute an endorsement of the Plan by the Court, or a recommendation that it be accepted.***

## II.    BACKGROUND

### A.    Description and History of the Debtor's Business

The Debtor is a corporation registered in the State of Alabama, and operates a tire sales and auto repair business.  The Debtor's location of operations is 1024 Putman Drive NW, Suite 2, Huntsville, Alabama 35816.  The Debtor leases the premises.

### B.    Insiders of the Debtor

Names: Brian Lombardino

Relationship to Debtor: The sole owner of the Debtor.

### C.    Management of the Debtor Before and During the Bankruptcy

During the two years prior to the date on which the bankruptcy petition was filed, as well as during this Chapter 11 case, the officers, directors, managers or other persons in control of the Debtor was and still is Brian Lombardino. He will remain as the sole officer after the effective date.

### D.    Events Leading to Chapter 11 Filing

The Debtor's primary reason for filing this case was due to substantial tax debt owed to the IRS.  The Debtor needs to reorganize its business affairs and pay off the tax debt.

### E.    Significant Events During the Bankruptcy Case

The Debtor has increased its profitability by cutting payroll expenses and other unnecessary expenses, increasing the Debtor's efficiency of operations.

### F.    Projected Recovery of Avoidable Transfers

The Debtor does not intend to pursue preference, fraudulent conveyance, or other avoidance actions.

### G.    Claims Objections

Except to the extent that a claim is already allowed pursuant to a final non-appealable order, the Debtor reserves the right to object to claims.  Therefore, even if your claim is allowed for voting purposes, you may not be entitled to a distribution if an objection to your claim is later upheld.  The procedures for resolving disputed claims are set forth in Article V of the Plan.

### H.    Current and Historical Financial Conditions

The identity and fair market value of the estate's assets are as follows:

Assets: Checking account, receivables, inventory, equipment/machinery, and office furniture, and goodwill.

The Debtor has filed financial statements with the Court along with its monthly operating reports.

### III.    SUMMARY OF THE PLAN OF REORGANIZATION AND TREATMENT OF CLAIMS AND EQUITY INTERESTS

#### A.    What is the Purpose of the Plan of Reorganization?

As required by the Code, the Plan places claims and equity interests in various classes and describes the treatment each class will receive.  The Plan also states whether each class of claims or equity interests is impaired or unimpaired.  If the Plan is confirmed, your recovery will be limited to the amount provided by the Plan.

#### B.    Unclassified Claims

Certain types of claims are automatically entitled to specific treatment under the Code.  They are not considered impaired, and holders of such claims do not vote on the Plan.  They may, however, object if, in their view, their treatment under the Plan does not comply with that required by the Code.  As such, the Plan Proponent has not placed the following claims in any class:

##### 1.    *Administrative Expenses*

Administrative expenses are costs or expenses of administering the Debtor's chapter 11 case which are allowed under § 507(a)(2) of the Code.  Administrative expenses also include the value of any goods sold to the Debtor in the ordinary course of business and received within 20 days before the date of the bankruptcy petition.  The Code requires that all administrative expenses be paid on the effective date of the Plan, unless a particular claimant agrees to a different treatment.

The following chart lists the Debtor's estimated administrative expenses, and their proposed treatment under the Plan:

| Type | Estimated Amount Owed | Proposed Treatment |
|---|---|---|
| Expenses Arising in the Ordinary Course of Business After the Petition Date | $0.00 | Paid in full on the effective date of the Plan, or according to terms of obligation if later |
| The Value of Goods Received in the Ordinary Course of Business Within 20 Days Before the Petition Date | $0.00 | Paid in full on the effective date of the Plan, or according to terms of obligation if later |
| Professional Fees, as approved by the Court. | $12,000.00 (estimated) | Paid in full on the effective date of the Plan only if funds are available, or according to separate written agreement, or according to court order if such fees have not been approved by the Court on the effective date of the Plan. |
| Clerk's Office Fees | $0.00 | Paid in full on the effective date of the Plan |

| | | |
|---|---|---|
| Other administrative expenses | $0.00 | Paid in full on the effective date of the Plan or according to separate written agreement |
| Office of the U.S. Trustee Fees | | US Trustee fees are current and shall be paid for each quarter the case remains open. |
| TOTAL | | |

2.    *Priority Tax Claims*

Priority tax claims are unsecured income, employment, and other taxes described by § 507(a)(8) of the Code.  Unless the holder of such a § 507(a)(8) priority tax claim agrees otherwise, it must receive the present value of such claim, in regular installments paid over a period not exceeding 5 years from the order of relief.

The following chart lists the Debtor's estimated § 507(a)(8) priority tax claims and their proposed treatment under the Plan:

| Description (name and type of tax) | Estimated Amount Owed | Date of Assessment | Treatment |
|---|---|---|---|
| • State of Alabama, Department of Revenue<br>• Internal Revenue Service<br>• City of Huntsville | $16,720.56<br><br>$238,567.79<br><br>$10,734.13 | | Paid in full at 3% interest in quarterly installment payments beginning on or before September 30, 2019 or as more specifically set forth in the Amended Plan of Reorganization. |

**C.    Classes of Claims and Equity Interests**

The following are the classes set forth in the Plan, and the proposed treatment that they will receive under the Plan:

1.    *Classes of Secured Claims*

Allowed Secured Claims are claims secured by property of the Debtor's bankruptcy estate (or that are subject to setoff) to the extent allowed as secured claims under § 506 of the Code.  If the value of the collateral or setoffs securing the creditor's claim is less than the amount of the creditor's allowed claim, the deficiency will be classified as a general unsecured claim.

The following chart lists all classes containing Debtor's secured prepetition claims and their proposed treatment under the Plan:

| Class # | Description | Insider? (Yes or No) | Impairment | Treatment |
|---|---|---|---|---|
| 2 | *Secured claim of:* Kapitus Servicing, Inc. f/k/a Colonial Funding Network, Inc. as servicer for Arca Funding, LLC<br><br>Collateral Description:  All assets of the Debtor other than equipment/machinery under lease.<br><br>Allowed Secured Amount $82,000 | No | Impaired | The secured claim of Kapitus Servicing, Inc. as servicer for Arca Funding, LLC shall be paid in accordance with the *Agreed Final Order Granting, in part, and Denying, in Part, Motion to Prohibit Use of Cash Collateral and Prohibit the Debtor's Use of Non-estate Property* entered on March 14, 2019 (the "Agreed Order," Doc. 118). The terms of the Agreed Order shall control. The Agreed Order is attached hereto as "Exhibit B" to the Amended Disclosure Statement. |

2.      *Classes of Priority Unsecured Claims*

There are no priority claims other than tax claims.

3.      *Class of leasehold/executory contract creditors.*

## Class Number 3

1) Financial Pacific Leasing, Inc.
    a. Prepetition Arrearage: $1,237.06
    b. Total of 37 payments remaining in the amount of $453.62 per payment, which encompasses the arrearage amount.
2) Snap-On Credit
    a. Prepetition Arrearage: $3,142.99
    b. Total of 34 payments remaining in the amount of $1,015.72 per payment, which encompasses the arrearage amounts.

Financial Pacific Leasing, Inc. and Snap-On Credit are lessors to the Debtor of equipment and/or machinery.  First Data Global Leasing is a lessor to the Debtor of the Debtor's credit card processing machine, which will be paid in full on or before March 30, 2019.  The Debtor will continue making the regular payments due to the leasehold creditors and will pay the past-due payments in additional monthly installments after the lease term has ended.  The additional monthly installment payments shall be made in an amount not to exceed the contractual monthly payment amount during the lease term and shall be paid until the debt is paid in full as set forth above.

3. *Class of General Unsecured Claims*

**Class Number 4**

**Class 4 will be paid a five (5) percent dividend.  The total claims of each general unsecured creditor in Class 4 are listed below.**

1) Internal Revenue Service: $78,381.66
2) Alabama Department of Revenue: $2,759.08
3) American Express National Bank: $35,919.49
4) Schrimsher Properties: $16,758.68
5) Genuine Parts Company (NAPA): $4,017.45
6) City of Huntsville: $37.78
7) Colonial Funding Network, Inc.: $59,428.95
8) Advance Auto Parts: $21,000.00
9) Capital One/Spark: $2,000.00
10) Cintas: $2,068.09
11) FEA Distributors, Inc.: $2,328.95
12) CITI/Costco: $8,021.00
13) Jasper Engines: $3,212.84
14) Larson Financial: $600.00
15) Liberty Mutual Insurance: $1,718.41
16) PNC Bank: $8,564.00
17) WOW Business: $837.86
18) Yelp: $943.07

4. *Class of Equity Interest Holders*

Equity interest holders are parties who hold an ownership interest (i.e., equity interest) in the Debtor.  In a corporation, entities holding preferred or common stock are equity interest holders.  In a partnership, equity interest holders include both general and limited partners.  In a limited liability company ("LLC"), the equity interest holders are the members.

The following chart sets forth the Plan's proposed treatment of the class of equity interest holders:

| Class # | Description | Impairment | Treatment |
|---|---|---|---|
| 5 | Equity interest holder: Brian Lombardino | Impaired | The equity security holder will waive distributions under the Plan as additional new value consideration to retain their equity interests. |

**D.    Means of Implementing the Plan**

1. *Source of Payments*

Payments and distributions under the Plan will be funded by the following:

Income generated from the operation of Debtor's business.

2.    *Post-confirmation Management*

The Post-Confirmation Managers of the Debtor, and their compensation, shall be as follows:

| Name | Affiliations | Insider (yes or no)? | Position | Compensation |
|---|---|---|---|---|
| Brian Lombardino | Owner | Yes | President | $84,000 yearly |

**E.    Risk Factors**

The proposed Plan has the following risks:

The Debtor's business has suffered in recent years due to inefficiencies in its operations.   Debtor believes that lessening expenses and increased marketing can lead to sustained profitability.

**F.    Executory Contracts and Unexpired Leases**

The Plan does provide for the assumption of executory contracts and/or unexpired leases.

Assumed Leases

1)  Snap-On Credit: Lease for alignment machine and alignment lift
2)  Financial Pacific Leasing, Inc.: Lease for wheel balancer and tire changer

**G.    Tax Consequences of Plan**

***Creditors and Equity Interest Holders Concerned with How the Plan May Affect Their Tax Liability Should Consult with Their Own Accountants, Attorneys, And/Or Advisors.***

The following are the anticipated tax consequences of the Plan: The Debtor has proposed to pay its pre-petition priority tax obligations in full and will pay post-petition taxes as they come due post-confirmation.

**IV.    CONFIRMATION REQUIREMENTS AND PROCEDURES**

To be confirmable, the Plan must meet the requirements listed in §§ 1129(a) or (b) of the Code.  These include the requirements that:  the Plan must be proposed in good faith; at least one impaired class of claims must accept the plan, without counting votes of insiders; the Plan must distribute to each creditor and equity interest holder at least as much as the creditor or equity interest holder would receive in a chapter 7 liquidation case, unless the creditor or equity interest holder votes to accept the Plan; and the Plan must be feasible.  These requirements are <u>not</u> the only requirements listed in § 1129, and they are not the only requirements for confirmation.

### A.    Who May Vote or Object

Any party in interest may object to the confirmation of the Plan if the party believes that the requirements for confirmation are not met.

Many parties in interest, however, are not entitled to vote to accept or reject the Plan.  A creditor or equity interest holder has a right to vote for or against the Plan only if that creditor or equity interest holder has a claim or equity interest that is both (1) allowed or allowed for voting purposes and (2) impaired.

In this case, the Plan Proponent believes that classes 2, 3, and 4 are impaired and that holders of claims in each of these classes are therefore entitled to vote to accept or reject the Plan.  The Plan Proponent believes that class 1 is unimpaired and that holders of claims in each of these classes, therefore, do not have the right to vote to accept or reject the Plan.

### 1.    *What Is an Allowed Claim or an Allowed Equity Interest?*

Only a creditor or equity interest holder with an allowed claim or an allowed equity interest has the right to vote on the Plan.  Generally, a claim or equity interest is allowed if either (1) the Debtor has scheduled the claim on the Debtor's schedules, unless the claim has been scheduled as disputed, contingent, or unliquidated, or (2) the creditor has filed a proof of claim or equity interest, unless an objection has been filed to such proof of claim or equity interest.  When a claim or equity interest is not allowed, the creditor or equity interest holder holding the claim or equity interest cannot vote unless the Court, after notice and hearing, either overrules the objection or allows the claim or equity interest for voting purposes pursuant to Rule 3018(a) of the Federal Rules of Bankruptcy Procedure.

**The deadline for filing a proof of claim in this case was January 2, 2019.  The deadline for government entities to file claims is April 1, 2019.**

### 2.    *What Is an Impaired Claim or Impaired Equity Interest?*

As noted above, the holder of an allowed claim or equity interest has the right to vote only if it is in a class that is *impaired* under the Plan.  As provided in § 1124 of the Code, a class is considered impaired if the Plan alters the legal, equitable, or contractual rights of the members of that class.

### 3.    *Who is **Not** Entitled to Vote*

The holders of the following five types of claims and equity interests are *not* entitled to vote:

> holders of claims and equity interests that have been disallowed by an order of the Court;

> holders of other claims or equity interests that are not "allowed claims" or "allowed equity interests" (as discussed above), unless they have been "allowed" for voting purposes.

holders of claims or equity interests in unimpaired classes;

holders of claims entitled to priority pursuant to §§ 507(a)(2), (a)(3), and (a)(8) of the Code; and

holders of claims or equity interests in classes that do not receive or retain any value under the Plan;

administrative expenses.

***Even If You Are Not Entitled to Vote on the Plan, You Have a Right to Object to the Confirmation of the Plan and to the Adequacy of the Disclosure Statement.***

4.      *Who Can Vote in More Than One Class*

A creditor whose claim has been allowed in part as a secured claim and in part as an unsecured claim, or who otherwise hold claims in multiple classes, is entitled to accept or reject a Plan in each capacity, and should cast one ballot for each claim.

**B.      Votes Necessary to Confirm the Plan**

If impaired classes exist, the Court cannot confirm the Plan unless (1) at least one impaired class of creditors has accepted the Plan without counting the votes of any insiders within that class, and (2) all impaired classes have voted to accept the Plan, unless the Plan is eligible to be confirmed by "cram down" on non-accepting classes, as discussed later in Section [B.2.].

1.      *Votes Necessary for a Class to Accept the Plan*

A class of claims accepts the Plan if both of the following occur: (1) the holders of more than one-half (1/2) of the allowed claims in the class, who vote, cast their votes to accept the Plan, and (2) the holders of at least two-thirds (2/3) in dollar amount of the allowed claims in the class, who vote, cast their votes to accept the Plan.

A class of equity interests accepts the Plan if the holders of at least two-thirds (2/3) in amount of the allowed equity interests in the class, who vote, cast their votes to accept the Plan.

2.      *Treatment of Nonaccepting Classes*

Even if one or more impaired classes reject the Plan, the Court may nonetheless confirm the Plan if the nonaccepting classes are treated in the manner prescribed by § 1129(b) of the Code.  A plan that binds nonaccepting classes is commonly referred to as a "cram down" plan.  The Code allows the Plan to bind nonaccepting classes of claims or equity interests if it meets all the requirements for consensual confirmation except the voting requirements of § 1129(a)(8) of the Code, does not "discriminate unfairly," and is "fair and equitable" toward each impaired class that has not voted to accept the Plan.

***You should consult your own attorney if a "cramdown" confirmation will affect your claim or equity interest, as the variations on this general rule are numerous and complex.***

### C.      Liquidation Analysis

To confirm the Plan, the Court must find that all creditors and equity interest holders who do not accept the Plan will receive at least as much under the Plan as such claim and equity interest holders would receive in a chapter 7 liquidation.  By this Plan, or any subsequent amendment thereto, the Debtor intends to ensure that all creditors will receive as much or more than they would receive in a liquidation of Debtor's assets.  The Debtor's liquidation analysis is attached as Exhibit "C."

### D.      Feasibility

The Court must find that confirmation of the Plan is not likely to be followed by the liquidation, or the need for further financial reorganization, of the Debtor or any successor to the Debtor, unless such liquidation or reorganization is proposed in the Plan.

#### 1.      *Ability to Initially Fund Plan*

The Debtor believes that it will have enough cash on hand on the effective date of the Plan to pay all the claims and expenses that are entitled to be paid on that date.  The attorneys' fees of Bruner Wright, P.A. will be paid pursuant to separate agreement in the event that there are not sufficient funds on hand after entry of any order approving fees by the Bankruptcy Court.

#### 2.      *Ability to Make Future Plan Payments And Operate Without Further Reorganization*

The Plan Proponent must also show that it will have enough cash over the life of the Plan to make the required Plan payments.  This is indicated by past performance, loan payments, and future loan payments.  Projections for the Debtor are attached to this Disclosure Statement as Exhibit "D."

***You Should Consult with Your Accountant or other Financial Advisor If You Have Any Questions Pertaining to These Projections.***

## V.      EFFECT OF CONFIRMATION OF PLAN

### A.      DISCHARGE OF DEBTOR

Discharge.  On the effective date of the Plan, the Debtor shall be discharged from any debt that arose before confirmation of the Plan, subject to the occurrence of the effective date, to the extent specified in § 1141(d)(1)(A) of the Code, except that the Debtor shall not be discharged of any debt (i) imposed by the Plan, (ii) of a kind specified in § 1141(d)(6)(A) if a timely complaint was filed in accordance with Rule 4007(c) of the Federal Rules of Bankruptcy Procedure, or (iii) of a kind specified in § 1141(d)(6)(B). After the effective date of the Plan your claims against the Debtor will be limited to the debts described in clauses (i) through (iii) of the preceding sentence.

B.    **Modification of Plan**

The Plan Proponent may modify the Plan at any time before confirmation of the Plan.  However, the Court may require a new disclosure statement and/or revoting on the Plan.

Upon request of the Debtor, the United States trustee, or the holder of an allowed unsecured claim, the Plan may be modified at any time after confirmation of the Plan but before the completion of payments under the Plan, to (1) increase or reduce the amount of payments under the Plan on claims of a particular class, (2) extend or reduce the time period for such payments, or (3) alter the amount of distribution to a creditor whose claim is provided for by the Plan to the extent necessary to take account of any payment of the claim made other than under the Plan.

C.    **Final Decree**

Once the estate has been fully administered, as provided in Rule 3022 of the Federal Rules of Bankruptcy Procedure, the Plan Proponent, or such other party as the Court shall designate in the Plan Confirmation Order, shall file a motion with the Court to obtain a final decree to close the case.  Alternatively, the Court may enter such a final decree on its own motion.

Dated: March 26, 2019                              Respectfully submitted,


                                                   */s/ Brian Lombardino*
                                                   Brian Lombardino, President
                                                   of the Debtor/Plan Proponent

                                                   **Bruner Wright, P.A**

                                        By:        */s/ Byron Wright III*
                                                   Byron Wright III
                                                   Florida Bar No. 118971
                                                   twright@brunerwright.com
                                                   Robert C. Bruner
                                                   Florida Bar No. 0065876
                                                   rbruner@brunerwright.com
                                                   2810 Remington Green Circle
                                                   Tallahassee, FL  32308
                                                   Office: (850) 385-0342
                                                   Fax: (850) 270-2441
                                                   Attorneys for the Debtor

# EXHIBIT A

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION

IN RE:

YWFM, LLC D/B/A,                                    CASE NO.: 18-40469-KKS
Brian's Tire and Service,                           CHAPTER 11

      Debtor.
_____/

## AMENDED CHAPTER 11 PLAN OF REORGANIZATION

### ARTICLE I
### SUMMARY

      This Amended Plan of Reorganization (the "Plan") under Chapter 11 of the Bankruptcy Code (the "Code") proposes to pay creditors of YWFM, LLC (the "Debtor") from cash flow from the normal operations of the Debtor's business.  The officers and directors of the Debtor will remain the same as outline in the Disclosure Statement.

      This Plan provides for one class of secured claims, one class of leasehold creditors, one class of general unsecured claims, and one class of equity security holders. This Plan also provides for the payment of administrative and priority claims in full as specified below.

      All creditors and equity security holders should refer to Articles III through VI of this Plan for information regarding the precise treatment of their claim.  A disclosure statement that provides more detailed information regarding this Plan and the rights of creditors and equity security holders has been circulated with this Plan.  **Your rights may be affected.  You should read these papers carefully and discuss them with your attorney, if you have one. (If you do not have an attorney, you may wish to consult one.)**

### ARTICLE II
### CLASSIFICATION OF CLAIMS AND INTERESTS

2.01    <u>Class 1</u>.   The unsecured, priority tax claims of the State of Alabama Department of Revenue, the Internal Revenue Service, and the City of Huntsville under Section 507(a)(8).

2.02    <u>Class 2</u>.   The claim of Kapitus Servicing, Inc. f/k/a Colonial Funding Network, Inc. as servicer for Arca Funding, LLC**.**

2.03    <u>Class 3</u>.   The claims of lessors Financial Pacific Leasing, Inc. and Snap-On Credit.

2.04    <u>Class 4.</u>   General unsecured claims.

2.05    Class 5.        The equity security holder of the Debtor.

## ARTICLE III
## TREATMENT OF ADMINISTRATIVE EXPENSE CLAIMS,
## U.S. TRUSTEES FEES, AND PRIORITY TAX CLAIMS

3.01    Unclassified Claims.  Under section §1123(a)(1), administrative expense claims are not in classes.

3.02    Administrative Expense Claims.  Each holder of an administrative expense claim allowed under § 503 of the will be paid in full upon later of the effective date of this Plan, in cash, or upon such other terms as may be agreed upon by the holder of the claim and the Debtor.

3.03    Priority Tax Claims.  Each holder of a priority tax claim will be paid in full as provided herein.

3.04    United States Trustee Fees.  All fees required to be paid by 28 U.S.C. §1930(a)(6) (U.S. Trustee Fees) will accrue and be timely paid until the case is closed, dismissed, or converted to another chapter of the Code.  Any U.S. Trustee Fees owed on or before the effective date of this Plan will be paid on the effective date.

## ARTICLE IV
## TREATMENT OF CLAIMS AND INTERESTS UNDER THE PLAN

4.01    Claims and interests shall be treated as follows under this Plan:

| Class | Impairment | Treatment |
|---|---|---|
| Class 1 - Priority Claims, unsecured Claims of:<br>- State of Alabama, Department of Revenue: $16,720.56<br>- Internal Revenue Service: $238,567.79<br>- City of Huntsville: $10,734.13 | Unimpaired | The State of Alabama and the City of Huntsville will be paid in full in at 3% interest in equal quarterly payments after the effective date, with the first payment due and payable on or before September 30, 2019. These claims shall be paid in full no later than August 30, 2023.  Debtor shall have a thirty (30) day cure period for all payments.<br><br>The Internal Revenue Service shall be paid in quarterly installments in the amount of $12,000.00 beginning on or before September 30, 2019 and continuing each quarter thereafter through March 31, 2023.  The Debtor shall make two further payments on or before June 30, 2023 an August 30, 2023, respectively.  The final two payments shall be in equal amounts of approximately $38,000.00. |
| Class 2 - Secured Claim of Kapitus Servicing, Inc. f/k/a Colonial | Impaired | The secured claim of Kapitus Servicing, Inc. as servicer for Arca Funding, LLC shall be paid in accordance with the *Agreed Final Order* |

| | | |
|---|---|---|
| Funding Network, Inc. as servicer for Arca Funding, LLC | | *Granting, in part, and Denying, in Part, Motion to Prohibit Use of Cash Collateral and Prohibit the Debtor's Use of Non-estate Property* entered on March 14, 2019 (the "Agreed Order," Doc. 118). The terms of the Agreed Order shall control. The Agreed Order is attached as "Exhibit B" to the Amended Disclosure Statement. |
| Class 3 – Claims of leasehold/executory contract creditors:<br><br>1) Financial Pacific Leasing, Inc.<br>2) Snap-On Credit | Impaired | 1) Financial Pacific Leasing: The Debtor shall pay a total of 37 remaining payments in the amount of $453.62 per payment.<br>2) Snap-On Credit: The Debtor shall pay a total of 34 remaining payments in the amount of $1,015.72 per payment. |
| Class 4 – General Unsecured Claims of:<br><br>1) Internal Revenue Service: $78,381.66<br>2) Alabama Department of Revenue: $2,759.08<br>3) American Express National Bank: $35,919.49<br>4) Schrimsher Properties: $16,758.68<br>5) Genuine Parts Company (NAPA): $4,017.45<br>6) City of Huntsville: $37.78<br>7) Colonial Funding Network, Inc.: $59,428.95<br>8) Advance Auto Parts: $21,000.00<br>9) Capital One/Spark: $2,000.00<br>10) Cintas: $2,068.09<br>11) FEA Distributors, Inc.: $2,328.95<br>12) CITI/Costco: $8,021.00<br>13) Jasper Engines: $3,212.84<br>14) Larson Financial: $600.00<br>15) Liberty Mutual Insurance: $1,718.41<br>16) PNC Bank: $8,564.00<br>17) WOW Business: $837.86<br>18) Yelp: $943.07 | Impaired | The general unsecured claims shall receive a five (5) percent dividend in quarterly payments with six (6) percent interest.  The first payment will be due on or before December 31, 2019, and will continue to become due on or before the last day of each calendar quarter thereafter, with the last payment being due on or before June 30, 2024. |

3

| | | |
|---|---|---|
| Class 5 - Equity Security Holder: Brian Lombardino | Impaired | The equity security holder will waive distributions under the Plan as additional new value consideration to retain his equity interest. |

## ARTICLE V
## ALLOWANCE AND DISALLOWANCE OF CLAIMS

5.01   Disputed Claim. A disputed claim is a claim that has not been allowed or disallowed [by a final non-appealable order], and as to which either: (i) a proof of claim has been filed or deemed filed, and the Debtor or another party in interest has filed an objection; or (ii) no proof of claim has been filed, and the Debtor has scheduled such claim as disputed, contingent, or unliquidated.

5.02   Delay of Distribution on a Disputed Claim.  No distribution will be made on account of a disputed claim unless such claim is allowed by a final non-appealable order.

5.03   Settlement of Disputed Claims.  The Debtor will have the power and authority to settle and compromise a disputed claim with court approval and compliance with Rule 9019 of the Federal Rules of Bankruptcy Procedure.

## ARTICLE VI
## PROVISIONS FOR EXECUTORY CONTRACTS AND UNEXPIRED LEASES

6.01   Assumed Executory Contracts and Unexpired Leases.

(a)   The Debtor assumes the following leases of personal property and/or executory contract(s) under this Plan:

1) Financial Pacific Leasing, Inc.
  - Leased Property: Wheel balancer and tire changer.

 2) Snap-On Credit

  - Leased Property: Alignment machine and alignment lift.

(b)   The Debtor will be conclusively deemed to have rejected all executory contracts and/or unexpired leases not expressly assumed under section 6.01(a) above, or before the date of the order confirming this Plan, upon the effective date of the Plan. A proof of a claim arising from the rejection of an executory contract or unexpired lease under this section must be filed no later than 21 days after the date of the order confirming this Plan or the Order allowing the rejection.

## ARTICLE VII
## MEANS FOR IMPLEMENTATION OF THE PLAN

Debtor shall fund its Plan from the continued operations of its business.

4

## ARTICLE VIII
## GENERAL PROVISIONS

8.01    <u>Definitions and Rules of Construction</u>.  The definitions and rules of construction set forth in §§ 101 and 102 of the Code shall apply when terms defined or construed in the Code are used in this Plan.

8.02    <u>Effective Date of Plan</u>.  The effective date of this Plan is the first business day following the date that is fourteen days after the entry of the order of confirmation. If, however, a stay of the confirmation order is in effect on that date, the effective date will be the first business day after the date on which the stay of the confirmation order expires or is otherwise terminated.

8.03    <u>Severability</u>.  If any provision in this Plan is determined to be unenforceable, the determination will in no way limit or affect the enforceability and operative effect of any other provision of this Plan.

8.04    <u>Binding Effect</u>.  The rights and obligations of any entity named or referred to in this Plan will be binding upon, and will inure to the benefit of the successors or assigns of such entity.

8.05    <u>Captions</u>.  The headings contained in this Plan are for convenience of reference only and do not affect the meaning or interpretation of this Plan.

8.06    <u>Controlling Effect</u>.  Unless a rule of law or procedure is supplied by federal law (including the Code or the Federal Rules of Bankruptcy Procedure), the laws of the State of Florida govern this Plan and any agreements, documents, and instruments executed in connection with this Plan, except as otherwise provided in this Plan.

## ARTICLE IX
## DISCHARGE OF DEBTOR

9.01 <u>Discharge</u>.  On the confirmation date of this Plan, the debtor will be discharged from any debt that arose before confirmation of this Plan, subject to the occurrence of the effective date, to the extent specified in §1141(d)(1)(A) of the Code, except that the Debtor will not be discharged of any debts: (i) imposed by this Plan; (ii) of a kind specified in §1141(d)(6)(A) if a timely complaint was filed in accordance with Fed. R. Bankr. P. 4007(c); or (iii) of a kind specified in §1141(d)(6)(B).

## ARTICLE X
## MISCELLANEOUS PROVISIONS

10.01 The Court shall retain jurisdiction until the estate is closed or this case is dismissed to hear and resolve all disputes between the Debtor and any creditor, including but not limited to disputes as to validity, amount and classification of any claim and disputes with creditors who are being paid directly within this Plan.

10.02   Anything herein to the contrary notwithstanding, the Debtor does not, by filing this Plan or seeking confirmation, waive its right to request that this case be dismissed at any time prior to or after confirmation, and the Debtor specifically reserves such right.

10.03   At the option of the Debtor, this Plan may be withdrawn or amended at any time prior to the entry of the Confirmation Order.  If such option is timely and properly exercised, the withdrawn plan or, in the case of an amendment, every plan except for the most recently filed plan, shall be null and void and of no legal effect and the case shall continue and be administered in accordance with the Bankruptcy Code.

Dated: March 26, 2019                                    Respectfully submitted,


                                                        */s/ Brian Lombardino*
                                                        Brian Lombardino, President
                                                        of the Debtor/Plan Proponent

                                                        **Bruner Wright, P.A**

                                        By:             */s/ Byron Wright III*
                                                        Byron Wright III
                                                        Florida Bar No. 118971
                                                        twright@brunerwright.com
                                                        Robert C. Bruner
                                                        Florida Bar No. 0065876
                                                        rbruner@brunerwright.com
                                                        2810 Remington Green Circle
                                                        Tallahassee, FL  32308
                                                        Office: (850) 385-0342
                                                        Fax: (850) 270-2441
                                                        Attorneys for the Debtor

6

# EXHIBIT B

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION

In re:                                              Chapter 11

YWFM, LLC d/b/a BRIAN'S TIRE,                       Case No. 18-40469-KKS
AND SERVICE,

       Debtor.

_____/

## AGREED FINAL ORDER GRANTING, IN PART, AND DENYING, IN PART, MOTION TO PROHIBIT USE OF CASH COLLATERAL AND PROHIBIT THE DEBTOR'S USE OF NON-ESTATE PROPERTY (Doc. 65)[1]

THIS MATTER came before the Court for a hearing on November 27, 2018 upon Kapitus Servicing, Inc., formerly Colonial Funding Network, Inc., as Servicer for Arca Funding, LLC's Motion to Prohibit Use of Cash Collateral and Prohibit the Debtor's Use of Non-estate Property (the "Motion") (Doc. No. 65). The Court has jurisdiction over the matters raised in the Motion pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157 (b)(2)(A). The relief requested in the Motion is in the best interest of YWFM, LLC d/b/a Brian's Tire and Service, debtor and debtor-in-possession (the "Debtor"), the estate, and creditors. Proper and adequate notice of the Motion and the hearing thereon has been given and no other or further notice is necessary. The parties have reached a full and

---

[1] The United States Trustee's Office, along with counsel for the Debtor and Kapitus, have consented to the form of this Order.

117240966.3

complete agreement, as described herein, which terms shall be expressly incorporated into a plan of reorganization and confirmation order.

Accordingly, it is

**ORDERED:**

1.    The Motion (Doc. 65) is hereby GRANTED, in part, and DENIED, in part, in *nunc pro tunc* to the Petition Date, pursuant to the terms herein.

2.    The Debtor is authorized to use the Cash Collateral (as defined herein) on a final basis as set forth herein.

3.    The Debtor and Kapitus Servicing, Inc., formerly Colonial Funding Network, Inc., as servicer for Arca Funding, LLC ("Kapitus", and, collectively with the Debtor, "Parties") are parties to a Merchant Cash Advance Agreement, Security Agreement and Guaranty dated April 2, 2018 (collectively, the "MCAA"). Pursuant to the MCAA, the Debtor is an obligor to Kapitus for the amounts set forth herein.

4.    Debtor's principal, Brian Lombardino ("Lombardino"), is a guarantor of the MCAA. Mr. Lombardino personally filed for protection under Chapter 11 of the Bankruptcy Code in the Northern District of Florida on August 27, 2018, Case Number 18-40457-KKS (the "Personal Case"). The Personal Case is still pending.

5.    The Debtor pledged all of its personal property assets, including, without limitation, accounts receivable, equipment, inventory, and general intangibles as collateral to secure its obligations to Kapitus (the "Pre-Petition Collateral"). As of the Petition Date, all cash and cash equivalents of the Debtor

2

were part of Kapitus' Pre-Petition Collateral or proceeds of said Pre-Petition Collateral.  Accordingly, Kapitus' Cash Collateral consists of any and all: (i) cash or cash equivalents on hand (whether under the control of the Debtor or any third party) and cash collections of the Debtor, whether obtained prior to, on or after the Petition Date; (ii) cash proceeds arising from collection, sale, lease or other disposition, use or conversion of any of the Pre-Petition Collateral, whether obtained prior to, on or after the Petition Date; and (iii) any other property of the Debtor that constitutes Cash Collateral.  The Debtor is hereby authorized to use Cash Collateral only on the terms and conditions as those set forth herein.

6.      The Debtor stipulates and acknowledges that as of the Petition Date, the Debtor was indebted to Kapitus in the amount of $114,428.95, which is comprised of (1) $109,428.95 in unpaid principal and (2) $5,000.00 in contractual default fees (the "Claim").

7.      The Debtor acknowledges that Kapitus has a valid, perfected, enforceable, unavoidable, first priority lien on all of the Debtor's property, including the Cash Collateral.

8.      The Debtor shall make an adequate protection payment of $2,000 on March 1, 2019 (the "Effective Date"), and, beginning on April 1, 2019, adequate protection payments of $92.31 every business day to Kapitus (the "Adequate Protection Payments").  These Adequate Protection Payments shall be applied to

3

the Debtor's obligations to Kapitus in accordance with the MCAA, or as may be determined by Kapitus in its sole discretion.

9.    All payments by Debtor to Kapitus shall be remitted via ACH payment, except for the March 1, 2019, payment, which shall be made by check. The Debtor shall provide Kapitus with a voided check and pursuant to this Order Kapitus is authorized to ACH debit from the account set forth on the voided check in accordance with the payment schedule set forth herein.  If the Debtor changes the bank account from which such ACH debits are being remitted, it shall provide Kapitus, within 5 business days of such change, the new bank account information and written authorization to deduct payments via ACH from such account in accordance with the terms of this Order.  Any fees incurred by Kapitus due to rejected ACH debits shall be due and payable to Debtor as they accrue in accordance with the fee schedule in the MCAA.

10.    As additional adequate protection for the use of Cash Collateral and for any diminution in value of the Prepetition Collateral and post-petition interest, costs, and fees ("Post-petition Indebtedness"), and as security of the Post-petition Indebtedness, Kapitus is granted a valid, perfected, unavoidable lien upon, and security interest in, to the extent and in the order of priority of any valid lien pre-petition, all cash or other proceeds generated post-petition by the Pre-Petition Collateral. Kapitus' liens against Debtor's Cash Collateral shall extend to any account holding such Cash Collateral, regardless of whether Kapitus has control

4

117240966.3

over such account, and encumbers any Cash Collateral held in debtor-in-possession accounts required by applicable law. Kapitus shall have a perfected post-petition replacement lien against Cash Collateral without the need to file or execute any document as may otherwise be required under applicable non-bankruptcy law.

11.    Kapitus is entitled to an administrative expense claim pursuant to 11 U.S.C. § 507(b) to the extent the above adequate protection proves insufficient and/or does not offset any diminution of value in the Cash Collateral.

12.    Kapitus contends that pursuant to the MCAA, Kapitus owns the Debtor's receivable and other rights to payment arising from or relating to the use by the Debtor's customers of cash, credit cards, charge cards, and debit cards in the ordinary course of the Debtor's business until such time that the Claim is paid in full. The Debtor reserves the right to dispute such contention.

13.    As of the Petition Date, there were no offsets, defenses, challenges, claims, or counterclaims of any kind or nature to any portion of the Claim, and no portion of the Claim is subject to avoidance, re-characterization, or subordination (contractual, equitable or otherwise) pursuant to the Bankruptcy Code or applicable non-bankruptcy law.

14.    The Debtor shall provide Kapitus proof of insurance, as set forth in the MCAA, (i) listing Kapitus as loss payee and (ii) including Kapitus as an additional insured and certificate holder under the policy, within 10 days of the date of the entry of this Order.

5

15.    The Debtor shall maintain its Cash Collateral at the same level that existed prepetition and not allow Cash Collateral to diminish.

16.    Kapitus may, with two days' notice, inspect Debtor's premises and Kapitus' collateral, and copy any of the Debtor's books and records, and Debtor shall provide to Kapitus any additional financial or other information as Kapitus may reasonably request.

17.    The Debtor waives the right to surcharge any of Kapitus' collateral under 11 U.S.C. § 506(c), including any Cash Collateral, as it is defined in the Bankruptcy Code.    Kapitus shall not be subject to the equitable doctrine of marshalling.

18.    Default: Unless waived by Kapitus in writing, the Debtor shall immediately cease using Cash Collateral upon the occurrence of one of the following events (an "Event of Default"):

    a. If a trustee is appointed in this Chapter 11 case;

    b. If the Debtor breaches any term or condition of this Order or the MCAA, other than defaults existing as of the Petition Date;[2]

    c. If the case is converted to a case under Chapter 7 of the Bankruptcy Code;

    d. If the case is dismissed.

Upon the filing of an appropriate motion, Kapitus shall be entitled to an emergency hearing, at which time it may seek relief, including, without limitation, the lifting

---

[2] To the extent this Order and the MCAA conflict, this Order shall control.

117240966.3

of the automatic stay under 11 U.S.C. § 362 and permitting it to take possession of all or a part of the Prepetition Collateral and Property.

19.    The rights of any creditor, party in interest or committee, whether formal or informal, including a Creditors' Committee, to dispute or challenge the validity, perfection, extent, amount and priority of Kapitus' Claim and liens and/or the right to dispute Kapitus' right to any adequate protection payments authorized under this Order (collectively, a "Challenge") are expressly preserved for sixty (60) days from the date of this Order (the "Challenge Period"). Upon the expiration of the Challenge Period (the "Challenge Period Deadline"), without the filing of a Challenge: (a) any and all such Challenges by any party (including, without limitation, any Creditors' Committee, any chapter 11 trustee, and/or any examiner or other estate representative appointed in this chapter 11 case, and any chapter 7 trustee and/or examiner or other estate representative appointed in any Successor Case), shall be deemed to be forever waived, released and barred, and (b) all of the Debtor's stipulations, acknowledgements, waivers, releases, affirmations and other stipulations to the priority, extent, and validity as to Kapitus's Claim, liens, and interests shall be of full force and effect and forever binding upon Kapitus, the Debtor, the Debtor's bankruptcy estate and all creditors, interest holders, and other parties in interest in this chapter 11 case and any subsequent chapter 7 case.

20.    This Order shall not effect a waiver or relinquishment of any rights that the Debtor or Kapitus have under the MCAA or at law including, but not limited to:

7

((b) Kapitus' right to object to impermissible use of Cash Collateral; (c) Kapitus' right to assert any other rights, remedies, or defenses available to Kapitus and to respond to any motion, application, proposal, or other action, all such rights, remedies, defenses, and opportunities to respond being specifically reserved by Kapitus; (d) Kapitus' right to arbitrate under the MCAA or (e) any of the rights or remedies of Kapitus under the Bankruptcy Code or under non-bankruptcy law, including, without limitation, the right to (i) request modification of the automatic stay of Bankruptcy Code § 362, and (ii) request dismissal or conversion of this chapter 11 case. Kapitus' Reservation of Rights in its proof of claim (Claim No. 12-1, Part 2 pp. 5-6) is expressly incorporated herein. Nothing herein shall be construed to impair Kapitus' rights to seek the payment of default interest and the payment of their attorney's fees and expenses from the Debtor. This Order, as well as any other appearance, filing, or statement in this case or the Personal Case, by or on behalf of Kapitus, shall not be deemed a waiver of such rights and remedies.

21.    The Parties agree to the following terms and conditions for any plan of reorganization and confirmation order, either in existence or in the future:

    a.    Kapitus' Claim is allowed in full. Kapitus shall have an allowed secured claim in the amount of $89,500 (the "Allowed Secured Claim"), with the balance of the Claim treated as a general unsecured claim.

b. The Allowed Secured Claim shall be paid over four years with 8.0% interest. Payments shall be made every business day in the amount of $92.31, with all such payments made via ACH. All Adequate Protection Payments made pursuant to Paragraph 8 of the Final Cash Collateral Order shall be applied to the Allowed Secured Claim as if payments were made pursuant to the plan terms stated herein, with plan payments beginning on the Effective Date of the Plan.

c. The Debtor shall be credited $7,500 to the Allowed Secured Claim as credit for additional adequate protection payments made prior to the Effective Date.

d. If the Debtor changes the bank account from which such ACH debits are being remitted, it shall provide Kapitus, within 5 business days of such change, the new bank account information and a written authorization to deduct payments via ACH from such account in accordance with the terms of the order confirming the Plan. Any fees incurred by Kapitus due to rejected ACH debits shall be due and payable by Debtor as they accrue in accordance with the fee schedule in the MCAA dated April 2, 2018 between the Debtor and Kapitus.

e. The secured debt shall be secured, post confirmation, by the same assets described in Kapitus' UCC Financing Statement No. 16-

9

7526382, filed on November 22, 2016, with the Alabama Secretary of State. The security interest shall be perfected as of the date of entry of the confirmation order without the need to file or execute any document as may otherwise be required under applicable non-bankruptcy law.

f. Kapitus is authorized, but not required, to file a new post-confirmation UCC financing statement to continue the perfection of the prepetition security interest described in UCC Financing Statement No.16-7526382, filed on November 22, 2016, with the Alabama Secretary of State.

g. All other terms of the MCAA and the Plan not modified by the confirmation order shall remain in full force and effect. The MCAA as modified by the confirmation order shall be binding upon and enforceable against the Debtor to the fullest extent under applicable law.

h. All terms of the guaranties of Brian Lombardino, and any other existing guaranties shall remain in full force and effect and shall be binding upon and enforceable against the guarantors to the fullest extent under applicable law, to the extent modified herein:

　i. Mr. Lombardino agrees to a $25,000 non-dischargeable personal guarantee for the full payment of the Allowed

117240966.3

Secured Claim under the terms and conditions expressed herein (the "$25,000 Guarantee"). The $25,000 Guarantee is a "back-end" guarantee, and will not be reduced until the balance of the Allowed Secured Claim reaches a balance of $25,000 or less, and will then be reduced to the same extent and manner of the Allowed Secured Claim, with both the $25,000 Guarantee and the Allowed Secured Claim having the same outstanding balance until paid in full.

ii. Mr. Lombardino further agrees to a "springing" non-dischargeable guarantee for full outstanding balance of the Allowed Secured Claim that exists at the time the guarantee comes into effect (the "Springing Guarantee"). The Springing Guarantee shall come into force and effect if either the Debtor or Mr. Lombardino pay the full balance of the Internal Revenue Service's secured or priority unsecured claims in this case and Mr. Lombardino's personal case in full prior to full repayment of the Allowed Secured Claim.

iii. Kapitus shall not act or attempt to collect on either the $25,000 Guarantee or the Springing Guarantee as long as the Debtor remains current under the plan terms presented herein.

117240966.3

iv. These terms and conditions shall be expressly stated in any plan or confirmation order in Mr. Lombardino's personal bankruptcy case, Case Number 18-40457-KKS (the "Personal Case"). These guaranty provisions are conditioned on the confirmation of the Personal Case. Debtor and Mr. Lombardino will make their best efforts and will act in good faith to ensure that the Personal Case is confirmed.

i. A failure by the Debtor to make a payment to Kapitus pursuant to the terms of the Plan and the confirmation order shall be an Event of Default. If the Debtor fails to cure an Event of Default as to such payments within fifteen (15) days after receipt of written notice of default from Kapitus, then Kapitus may:

  i. Enforce the entire amount of its claim;

  ii. Exercise any and all rights and remedies that Kapitus has under applicable law and/or the MCAA; and/or

  iii. seek such relief as may be appropriate in the Bankruptcy Court.

j. The Debtor shall have the opportunity to cure two (2) times over the life of the Plan. In the event of the third default, Kapitus may proceed with the remedies for collection of all amounts due under

12

the MCAA and pursuant to applicable law.

k.  Notwithstanding anything in the Plan or confirmation order to the contrary, with respect to Kapitus only, the Plan and/or confirmation order shall not release or discharge any entity, other than the Debtor, solely as provided in the Plan and/or confirmation order, from any liability owed to Kapitus under the MCAA, including, without limitation, interest, costs, and attorneys' fees and expenses. This provision shall not be an admission by any party that such liability exists.

l.  Notwithstanding anything in the Plan and/or confirmation order to the contrary, with respect to Kapitus only, the Plan and/or confirmation order shall not limit Kapitus' setoff rights under 11 U.S.C. § 553 or any rights to recoupment. Nothing in the Plan and/or confirmation order shall be interpreted to enjoin or limit Kapitus from asserting those rights. This provision is not an admission by any party that such setoff or recoupment rights exist.

m. The Debtor will take all actions, execute, and delivery any and all documents reasonably necessary to carry out the intent of its agreement for the treatment of Kapitus' secured claim as set forth in the Plan and/or confirmation order including, without limitation, to maintain the perfection of Kapitus' security interests described in

13

Kapitus' Proof of Claim (Claim No. 12-1, filed on December 31, 2018) and with respect to the obligations under the MCAA, the existing guaranty (or guaranties), the Plan, and the confirmation order.

22.    This Order and any other cash collateral order of the Debtor shall be binding on a subsequently appointed Chapter 11 or Chapter 7 Trustee in bankruptcy.

23.    This Order is without prejudice to any other right or remedy which may be available to Kapitus.

24.    The Court shall retain jurisdiction to enforce the terms of this Order.

DONE AND ORDERED on March 14, 2019 .

KAREN K. SPECIE
Chief U.S. Bankruptcy Judge

Attorney Donald Kirk is directed to serve a copy of this order on interested parties and file a certificate of service within 3 business days of entry of this order.

Prepared By:

Donald R. Kirk
Carlton Fields Jorden Burt, P.A.
Post Office Box 3239
Tampa, Florida 33601
Florida Bar No. 0105767
Telephone:  (813) 223-7000

117240966.3

# EXHIBIT C

**<u>DISCLOSURE STATEMENT</u>**
**<u>EXHIBIT B</u>**
**<u>LIQUIDATION ANALYSIS</u>**

<u>ASSETS, GOING CONCERN VALUE, SECURED DEBT, & LIQUIDATION VALUE</u>
<u>OF NON-EXEMPT ASSETS</u>

1. Business Checking Account – Redstone Federal Credit Union
   - Going Concern Value: $5,000
   - Secured Debt: Colonial Funding, Inc. has a lien on all of Debtor's Assets
   - Liquidation Value: $0.00
2. Accounts Receivable
   - Going Concern Value as of December 31, 2018: $3,332.58
   - Secured Debt: Colonial Funding, Inc. has a lien on all of Debtor's Assets
   - Liquidation Value: $0.00
3. Inventory
   - Going Concern Value as of December 31, 2018: $7016.22
   - Secured Debt: : Colonial Funding, Inc. has a lien on all of Debtor's Assets
   - Liquidation Value: $0.00
4. Office furniture and office equipment
   - Going Concern Value: $5,000.00
   - Secured Debt: : Colonial Funding, Inc. has a lien on all of Debtor's Assets
   - Liquidation Value: $0.00
5. Leasehold interest in certain Equipment/Machinery
   - Going Concern Value: $15,000.00
   - Secured Debt: Subject to Snap-On Credit and Financial Pacific Leasing
   - Liquidation Value: $0.00
6. Other Equipment and Machinery owned by the Debtor
   - Going Concern Value: $25,000
   - Secured Debt: : Colonial Funding, Inc. has a lien on all of Debtor's Assets
   - Liquidation Value: $0.00

**TOTAL LIQUIDATION VALUE: $0.00**

# EXHIBIT D

**YWFM, LLC**
**Profit & Loss Budget Overview**
FIVE YEAR PROJECTION

| | | YEAR 1 | | YEAR 2 | | YEAR 3 | | YEAR 4 | | YEAR 5 |
|---|---|---|---|---|---|---|---|---|---|---|
| **Ordinary Income/Expense** | | | | | | | | | | |
| Income | | | | | | | | | | |
| | SALES-LABOR | $ 659,280.18 | $ | 612,774.21 | $ | 659,420.22 | $ | 650,150.91 | $ | 622,824.72 |
| | SALES-PARTS | $ 610,933.35 | $ | 574,197.30 | $ | 601,558.41 | $ | 602,418.66 | $ | 555,851.70 |
| | SALES-TIRES | $ 358,450.24 | $ | 377,065.71 | $ | 369,608.97 | $ | 343,191.39 | $ | 324,627.66 |
| | **Total Sales** | $ 1,628,663.77 | $ | 1,564,037.22 | $ | 1,630,587.60 | $ | 1,595,760.96 | $ | 1,503,304.08 |
| | **Redstone Federal Credit Union C** | | | | | | | | | |
| | Credit Dividend | $ 3.22 | $ | 3.22 | $ | 3.22 | $ | 3.22 | $ | 3.22 |
| | Redstone Federal Credit Union C - Other | $ 0.63 | $ | 0.63 | $ | 0.63 | $ | 0.63 | $ | 0.63 |
| | **Total Redstone Federal Credit Union C** | $ 3.85 | $ | 3.85 | $ | 3.85 | $ | 3.85 | $ | 3.85 |
| **Total Income** | | $ 1,628,671.47 | $ | 1,564,044.92 | $ | 1,630,595.30 | $ | 1,595,768.66 | $ | 1,503,311.78 |
| **Cost of Goods Sold** | | | | | | | | | | |
| | **COST OF GOODS SOLD** | | | | | | | | | |
| | Cost of Labor | | | | | | | | | |
| | Manager Salary | $ 96,773.57 | $ | 92,933.53 | $ | 96,887.88 | $ | 94,818.52 | $ | 89,324.83 |
| | Service Advisors | $ 133,869.65 | $ | 128,557.60 | $ | 134,027.78 | $ | 131,165.17 | $ | 123,565.58 |
| | Technician Wages | $ 337,094.31 | $ | 323,718.17 | $ | 337,492.50 | $ | 330,284.22 | $ | 311,147.87 |
| | **Total Cost of Labor** | $ 567,737.53 | $ | 545,209.30 | $ | 568,408.16 | $ | 556,267.91 | $ | 524,038.27 |
| | **PARTS COGS** | $ 403,222.95 | $ | 387,222.77 | $ | 403,699.25 | $ | 395,076.90 | $ | 372,186.52 |
| | **TIRES COGS** | $ 195,159.52 | $ | 187,415.45 | $ | 195,390.05 | $ | 191,216.84 | $ | 180,137.92 |
| | Payroll Taxes | | | | | | | | | |
| | **Total Payroll Taxes** | $ 53,225.39 | $ | 51,113.37 | $ | 53,288.27 | $ | 52,150.12 | $ | 49,128.59 |
| | SOFTWARE UPDATING | | | | | | | | | |
| | MOTORCRAFT PROGRAMMING | $ 540.00 | $ | 540.00 | $ | 540.00 | $ | 540.00 | $ | 540.00 |
| | RPM | $ 325.00 | $ | 325.00 | $ | 325.00 | $ | 325.00 | $ | 325.00 |
| | **Total SOFTWARE UPDATING** | $ 865.00 | $ | 865.00 | $ | 865.00 | $ | 865.00 | $ | 865.00 |
| | TOWING | $ 8,895.00 | $ | 8,895.00 | $ | 8,895.00 | $ | 8,895.00 | $ | 8,895.00 |
| | **Total COST OF GOODS SOLD** | $ 1,229,105.40 | $ | 1,180,720.89 | $ | 1,230,545.73 | $ | 1,204,471.77 | $ | 1,135,251.30 |
| **Total COGS** | | $ 1,229,105.40 | $ | 1,180,720.89 | $ | 1,230,545.73 | $ | 1,204,471.77 | $ | 1,135,251.30 |
| **Gross Profit** | | $ 399,566.07 | $ | 383,324.03 | $ | 400,049.57 | $ | 391,296.89 | $ | 368,060.48 |
| Expense | | | | | | | | | | |
| | Advertising and Promotion | | | | | | | | | |
| | Exchange Club | $ 100.00 | $ | 100.00 | $ | 100.00 | $ | 100.00 | $ | 100.00 |
| | Advertising and Promotion - Other | $ 760.00 | $ | 760.00 | $ | 760.00 | $ | 760.00 | $ | 760.00 |
| | **Total Advertising and Promotion** | $ 860.00 | $ | 860.00 | $ | 860.00 | $ | 860.00 | $ | 860.00 |
| | **Bank Service Charges** | $ - | $ | - | $ | - | $ | - | $ | - |
| | | $ - | $ | - | $ | - | $ | - | $ | - |

| | | | | | |
|---|---|---|---|---|---|
| **Business Licenses and Permits** | | | | | |
| HUNTSVILLE CITY PRIVILEGE LICEN | $ 2,078.18 | $ 1,995.72 | $ 2,080.64 | $ 2,036.20 | $ 1,918.23 |
| Business Licenses and Permits - Other | $ 325.73 | $ 312.81 | $ 326.12 | $ 319.15 | $ 300.66 |
| **Total Business Licenses and Permits** | $ 2,403.92 | $ 2,308.53 | $ 2,406.76 | $ 2,355.35 | $ 2,218.89 |
| **CREDIT CARD FEES** | | | | | |
| SYNCHRONY FEES | $ 4,071.68 | $ 3,910.11 | $ 4,076.49 | $ 3,989.42 | $ 3,758.28 |
| TSYS | $ 32,573.28 | $ 31,280.74 | $ 32,611.75 | $ 31,915.22 | $ 30,066.08 |
| **Total CREDIT CARD FEES** | $ 36,644.95 | $ 35,190.86 | $ 36,688.24 | $ 35,904.64 | $ 33,824.36 |
| **Dues and Subscriptions** | | | | | |
| MITCHELL1 | $ 9,420.00 | $ 10,800.00 | $ 11,400.00 | $ 11,844.00 | $ 12,600.00 |
| PEST CONTROL | $ 828.00 | $ 828.00 | $ 828.00 | $ 828.00 | $ 828.00 |
| ROTARY CLUB | $ 2,850.00 | $ 2,850.00 | $ 2,850.00 | $ 2,850.00 | $ 2,850.00 |
| TAGS | $ 463.48 | $ 463.48 | $ 463.48 | $ 463.48 | $ 463.48 |
| Dues and Subscriptions - Other | $ 1,628.67 | $ 1,564.04 | $ 1,630.60 | $ 1,595.77 | $ 1,503.31 |
| **Total Dues and Subscriptions** | $ 15,190.15 | $ 16,505.52 | $ 17,172.08 | $ 17,581.25 | $ 18,244.79 |
| **Insurance Expense** | | | | | |
| BUSINESS AUTO POLICY | $ 3,927.84 | $ 3,927.84 | $ 3,927.84 | $ 3,927.84 | $ 3,927.84 |
| COMMERCIAL PACKAGE | $ 9,480.00 | $ 9,480.00 | $ 9,480.00 | $ 9,480.00 | $ 9,480.00 |
| Worker's Compensation | $ 13,200.00 | $ 13,200.00 | $ 13,200.00 | $ 13,200.00 | $ 13,200.00 |
| **Total Insurance Expense** | $ 26,607.84 | $ 26,607.84 | $ 26,607.84 | $ 26,607.84 | $ 26,607.84 |
| **Meals and Entertainment** | $ 317.47 | $ 317.47 | $ 317.47 | $ 317.47 | $ 317.47 |
| **Miscellaneous Expense** | $ 952.61 | $ 952.61 | $ 952.61 | $ 952.61 | $ 952.61 |
| **Office Supplies** | $ 609.66 | $ 609.66 | $ 609.66 | $ 609.66 | $ 609.66 |
| **Payroll Expenses** | | | | | |
| Contract Labor | $ 1,500.00 | $ 1,500.00 | $ 1,500.00 | $ 1,500.00 | $ 1,500.00 |
| Officer Salary | $ 84,000.00 | $ 84,000.00 | $ 84,000.00 | $ 84,000.00 | $ 84,000.00 |
| Payroll Expenses - TAXES | $ 13,440.00 | $ 13,440.00 | $ 13,440.00 | $ 13,440.00 | $ 13,440.00 |
| **Total Payroll Expenses** | $ 98,940.00 | $ 98,940.00 | $ 98,940.00 | $ 98,940.00 | $ 98,940.00 |
| **Postage and Delivery** | $ 1,778.40 | $ 1,778.40 | $ 1,778.40 | $ 1,778.40 | $ 1,778.40 |
| **Professional Fees** | | | | | |
| ADS SECURITY | $ 504.00 | $ 576.00 | $ 660.00 | $ 708.00 | $ 780.00 |
| Professional Fees - Other | $ 12,000.00 | $ 12,000.00 | $ 12,000.00 | $ 12,000.00 | $ 12,000.00 |
| **Total Professional Fees** | $ 12,504.00 | $ 12,576.00 | $ 12,660.00 | $ 12,708.00 | $ 12,780.00 |
| **Rent Expense** | $ 60,000.00 | $ 63,000.00 | $ 65,000.04 | $ 67,500.00 | $ 72,500.00 |
| **Repairs and Maintenance** | | | | | |
| Fire Extinguisher Renewal | $ 114.50 | $ 114.50 | $ 114.50 | $ 114.50 | $ 114.50 |
| Repairs and Maintenance - Other | $ 1,791.54 | $ 1,720.45 | $ 1,793.65 | $ 1,755.35 | $ 1,653.64 |
| **Total Repairs and Maintenance** | $ 1,906.04 | $ 1,834.95 | $ 1,908.15 | $ 1,869.85 | $ 1,768.14 |
| **Small Tools and Equipment** | | | | | |
| FDGL LEASE PAYMENT | $ 1,258.32 | $ 1,258.32 | $ 1,258.32 | $ - | $ - |
| Lease-alignment machine | $ 12,865.80 | $ 12,865.80 | $ 12,865.80 | $ - | $ - |
| Equipment LEASE- BALANCER AND C | $ 5,323.68 | $ 5,323.68 | $ 5,323.68 | $ - | $ - |

| | | | | | | |
|---|---|---|---|---|---|---|
| Total Small Tools and Equipment | | $ 19,447.80 | $ 19,447.80 | $ 19,447.80 | $ - | $ - |
| tax | | | | | | |
| license renewal state county | | $ 389.71 | $ 389.71 | $ 389.71 | $ 389.71 | $ 389.71 |
| Total tax | | $ 389.71 | $ 389.71 | $ 389.71 | $ 389.71 | $ 389.71 |
| Taxes - Property | | | | | | |
| PROPERTY TAXES | | $ 292.31 | $ 292.31 | $ 292.31 | $ 292.31 | $ 292.31 |
| Total Taxes - Property | | $ 292.31 | $ 292.31 | $ 292.31 | $ 292.31 | $ 292.31 |
| Telephone Expense | | $ 13,278.72 | $ 13,278.72 | $ 13,278.72 | $ 13,278.72 | $ 13,278.72 |
| TRANSPORTATION | | | | | | |
| GAS | | $ 12,000.00 | $ 12,000.00 | $ 12,000.00 | $ 12,000.00 | $ 12,000.00 |
| TRANSPORTATION - Other | | $ - | $ - | $ - | $ - | $ - |
| Total TRANSPORTATION | | $ 12,000.00 | $ 12,000.00 | $ 12,000.00 | $ 12,000.00 | $ 12,000.00 |
| TRASH | | | | | | |
| REPUBLIC WASTE | | $ 1,920.00 | $ 2,040.00 | $ 2,160.00 | $ 2,280.00 | $ 2,400.00 |
| TRASH - Other | | $ 8,961.26 | $ 9,426.64 | $ 9,240.22 | $ 8,579.78 | $ 8,115.69 |
| Total TRASH | | $ 10,881.26 | $ 11,466.64 | $ 11,400.22 | $ 10,859.78 | $ 10,515.69 |
| UNIFORMS | | $ 1,791.54 | $ 1,720.45 | $ 1,793.65 | $ 1,755.35 | $ 1,653.64 |
| Utilities | | $ 9,772.03 | $ 9,384.27 | $ 9,783.57 | $ 9,574.61 | $ 9,019.87 |
| VOID | | $ - | $ - | $ - | $ - | $ - |
| Total Expense | | $ 326,568.41 | $ 303,607.02 | $ 308,348.52 | $ 290,148.83 | $ 292,493.39 |
| Net Ordinary Income | | $ 72,997.67 | $ 79,717.00 | $ 91,701.05 | $ 101,148.06 | $ 75,567.09 |
| Other Income/Expense | | | | | | |
| Other Income | | | | | | |
| Gain (Loss) Disposal of Assets | | $ - | $ - | $ - | $ - | $ - |
| Total Other Income | | $ - | $ - | $ - | $ - | $ - |
| Other Expense | | | | | | |
| BK PAYMENTS ARCA | $82,000 @ 8%  @ 2000 | $ 24,000.00 | $ 24,000.00 | $ 24,000.00 | $ 24,000.00 | |
| BK IRS | | $ 24,000.00 | $ 48,000.00 | $ 48,000.00 | $ 48,000.00 | $ 75,370.67 |
| STATE OF ALABAMA | $16,720.56 @ 3% FOR 4.5 years $331.40 | $ 3,976.80 | $ 3,976.80 | $ 3,976.80 | $ 3,976.80 | $ 1,985.40 |
| CITY OF HUNTSVILLE | $10,734.13 @ 3% FOR 4.5 YEARS $212.75 | $ 2,553.00 | $ 2,553.00 | $ 2,553.00 | $ 2,553.00 | $ 1,276.00 |
| 4 | | $ - | $ - | $ - | $ - | $ - |
| Unsecured Claims | | $ 1,400.00 | $ 2,800.00 | $ 2,800.00 | $ 2,800.00 | $ 700.00 |
| IRS | 3919.08 | | | | | |
| ADOR $2,759 | 137.95 | | | | | |
| American express | 1795.97 | | | | | |
| schrimsher | 837.93 | | | | | |
| napa | 200.87 | | | | | |
| city of huntsville | 1.89 | | | | | |
| advanc | 1050 | | | | | |
| cap 1 spark | 100 | | | | | |
| cintas | 103.4 | | | | | |
| FEA DISTRIBUTORS | 116.45 | | | | | |

| | | | | | |
|---|---|---|---|---|---|
| **CITI** | 401.05 | | | | |
| **JASPER** | 160.04 | | | | |
| **LARSON** | 30 | | | | |
| **LIBERTY MUTUAL** | 85.92 | | | | |
| **PNC BANK** | 428.2 | | | | |
| **WOW** | 41.89 | | | | |
| **YELP** | 47.15 | | | | |
| **Clearing** | $ - | $ - | $ - | $ - | $ - |
| **Total Other Expense** | $ 55,929.80 | $ 81,329.80 | $ 81,329.80 | $ 81,329.80 | $ 79,332.07 |
| **Net Other Income** | $ 17,067.87 | $ (1,612.80) | $ 10,371.25 | $ 19,818.26 | $ (3,764.98) |
| **Net Income** | $ 17,067.87 | $ (1,612.80) | $ 10,371.25 | $ 19,818.26 | $ (3,764.98) |